IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MIGUEL SOTO, | ) | CASE NO. 1:15 CV 1484 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Miguel A. Soto under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

## Facts

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Soto, who was 44 years old at the time of the administrative hearing,[11] has a twelfth grade education but does not have a high school diploma.[12] He currently lives with his parents in their basement.[13] Soto was last employed in 2009 with Dish Network but did not complete the training period.[14] His past relevant work history includes being a towmotor operator and a security guard.[15]

---

[6] ECF # 11.

[7] ECF # 21 (Commissioner's brief); ECF # 18 (Soto's brief).

[8] ECF # 21-1 (Commissioner's charts); ECF # 18-1 (Soto's charts).

[9] ECF # 17 (Soto's fact sheet).

[10] ECF # 23.

[11] ECF # 17 at 1.

[12] *Id.*

[13] ECF # 9, Transcript ("Tr.") at 64.

[14] *Id.* at 65.

[15] *Id.* at 66-68.

The ALJ, whose decision became the final decision of the Commissioner, found that Soto had the following severe impairments: dysfunction of major joints (right knee), and diabetes (20 CFR 404.1520(C) and 416.920(C)).[16]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Soto's residual functional capacity ("RFC"):

> After careful consideration of the record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant would require the option to sit or stand as needed for less than five minutes every hour; could occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally stoop; never kneel; occasionally crouch; never crawl; frequently handle, finger and feel bilaterally.[17]

Given that residual functional capacity, the ALJ found Soto incapable of performing his past relevant work as an towmotor operator and security guard.

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Soto could perform. The ALJ, therefore, found Soto not under a disability.

---

[16] *Id.* at 187.

[17] *Id.* at 189.

**B.    Issues on judicial review**

Soto asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, Soto presents the following issues for judicial review:[18]

- Whether the ALJ erred in formulating a residual functional capacity that did not include the medically-necessary use of a cane for standing and walking.

- Whether the ALJ erred in finding that plaintiff was capable of "frequently" using his hands for handling, fingering and feeling bilaterally, as the record supports that plaintiff can, at best, only occasionally perform such activities.

- Whether the ALJ erred in evaluation the opinions of plaintiff's treating physicians, including omitting consideration the doctors report of March 13, 2011.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is

---

[18] ECF # 18 at 1.

> limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## *2.    Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating

---

[22] 20 C.F.R. § 404.1527(d)(2).

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[33] *Id.* at 546.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[44] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[45] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

---

[40] *Rogers*, 486 F.3d 242.

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[43] *Gayheart*, 710 F.3d at 376.

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should

---

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

-10-

receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the

---

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[59]

- the rejection or discounting of the weight of a treating source without assigning weight,[60]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[61]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

---

[59] *Blakley*, 581 F.3d at 407-08.

[60] *Id.* at 408.

[61] *Id.*

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F. App'x at 551-52.

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

**B.    Application of standards**

Soto claims that the ALJ erred in formulating an RFC that did not account for the use of a cane, and further erred by finding that Soto could "frequently" use his hands.[70] In both

---

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

[67] *Id.* at 410.

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[69] *Id.* at 940.

[70] ECF # 18 at 1.

respects Soto asserts that these errors flow from the ALJ's mistake in downgrading the functional opinion of his treating physician.[71]

Dr. Jose Mendoza, M.D., was Soto's treating internist in 2010-2012. As such, he prescribed a cane for Soto.[72] He also opined that Soto was limited to no prolonged standing, walking or sitting, and that he should never bend, stoop or lift.[73]  Moreover, in different functional opinions, Dr. Mendoza stated that Soto's use of his hands was poor,[74] and that he has swelling and pain in his hands.[75] These functional opinions were assigned "some"[76] or "little"[77] weight by the ALJ, who concluded that Soto was not as limited as was described by Dr. Mendoza.[78]

By contrast to Dr. Mendoza's opinions about Soto's hands, although the ALJ found that "the claimant has a history of chronic pain and skin rash associated with psoratic

---

[71] *Id.*

[72] Tr. at 835-36.

[73] *Id.* at 469.

[74] *Id*. at 488.

[75] *Id*. at 488, 490, 779-81.

[76] *Id*. at 193.

[77] *Id*. at 194.

[78] *Id*. at 193.

arthritis,"[79] the ALJ found that steroids caused these symptoms to "improve dramatically."[80] In addition, the ALJ cited negative x-rays of the right and left hand, and mild symptom reporting by Soto himself in the subsequent year, as evidence that Soto's "joint pain and swelling is managed with anti-inflammatories and pain medication."[81]

Significantly, the ALJ also determined that the functional limitations set out by Dr. Khalid Darr, M.D., an examining physician, contradicted the opinions of Dr. Mendoza.[82] In particular, the ALJ pointed out that Dr. Darr's examination disclosed that Soto could move from station to station without a cane; and that Soto could make a fist with his hands, had normal grip strength, was able to write, and could pick up a coin.[83] The ALJ gave great weight to that portion of Dr. Darr's opinion addressing hand activities, observing that the examination notes, stated above, together with the evidence of the success of steroid treatment, shows that Soto could frequently handle, finger and feel bilaterally in the context of sedentary work.[84]

While the ALJ in this case does not strictly comply with the procedure set out in *Gayheart* for evaluating the opinions of a treating source, the ALJ does set out a lengthy

---

[79] *Id*. at 190.

[80] *Id*.

[81] *Id*. at 191.

[82] *Id*. at 195.

[83] *Id.*

[84] *Id*. at 192.

-15-

discussion of the opinion evidence over more than two full pages.[85] In that discussion, as noted, the ALJ gives details as to where Dr. Mendoza's limitations are inconsistent with both medical evidence and opinion evidence. He moreover goes into some specifics as to the discrepancies between the medical examination evidence and Dr. Mendoza's opinion.[86]

Soto argues that the ALJ should also have specifically considered an additional functional report by Dr. Mendoza from March, 2011.[87] While it is true that this report is not addressed by the ALJ, the ALJ did sufficiently articulate as to all source opinion evidence, apart from the 2011 opinion of Dr. Mendoza. Substantial evidence does not support the position argued by Soto that had the 2011 opinion containing lesser limitation been considered, the ALJ should have given greater weight to the Dr. Mendoza's collective opinions.

Alternatively, even assuming arguendo that substantial evidence could not support the ALJ's finding a capability for light work and for frequent use of the hands, the finding of no

---

[85] *Id*. at 193-95.

[86] Where Dr. Mendoza opined that Soto needed a cane, the ALJ found that during the physical consultative examination Soto was able to stand on one leg, had normal strength in his legs with normal sensation, and could walk from point to point unaided. *Id*. at 195. Similarly, as noted above, Dr. Mendoza's opinions as to hand activities was contradicted by examination findings that Soto could make a fist, write, had normal grip strength, and could pick up a coin. *Id*.

[87] ECF # 18 at 15.

disability must be affirmed under the harmless error jurisprudence explained in my decision in *Pechatsko v. Commissioner of Social Security*.[88]

In *Pechatsko*, the ALJ found that the claimant's RFC permitted her to perform her past relevant work.[89] Nevertheless, in questioning the VE at the hearing, the ALJ posed hypotheticals incorporating additional limitations that rendered opinions supporting the existence of a significant number of jobs that the claimant could perform.[90] Even though I found that RFC adopted by the ALJ did not have the support of substantial evidence, I affirmed the no disability decision because the testimony of the VE, based on a more limited RFC having the support of substantial evidence, did support a no disability decision at step five.[91]

As discussed above, the ALJ's omission of the need for a cane from the RFC has the support of substantial evidence. The ALJ did go beyond the RFC adopted at step four to pose to the VE a hypothetical incorporating sedentary exertional limitations with a sit/stand option and occasional use of the hands.[92] In response the ALJ identified a substantial number

---

[88] *Pechatsko v. Commissioner of Social Security*, 369 F. Supp.2d 909 (N.D. Ohio 2004).

[89] *Id*. at 910.

[90] *Id*.

[91] *Id*. at 910, 915.

[92] Tr. at 85.

of jobs existing in the local and national economies.[93] Counsel for Soto stated at oral argument that, but for the limitation as to the need for a cane, this hypothetical has the support of substantial evidence. Accordingly, even if the ALJ went too far in adopting an RFC incorporating the capacity for light work with frequent use of the hands, that error would be harmless and the finding of no disability must be affirmed.

## Conclusion

Therefore, for the reasons stated, I find that the decision of the Commissioner that Miguel Soto is not disabled has the support of substantial evidence and so is hereby affirmed.

IT IS SO ORDERED.

Dated: July 12, 2016                                s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

---

[93] *Id.*